and Daniel Salvatore, the Respondent of the House, are here on behalf of the Respondent of the House, Mr. Brian E. Sullivan. On behalf of Mr. Rafferty, Mr. William P. O'Neill. Mr. Sullivan, who's sitting at the council table? Your client, please sit in the gallery. The council table is for council. You may proceed, Mr. Sullivan. Good morning, Your Honors. May it please the Court, Brian Sullivan here on behalf of the Respondent, Appellant Daniel Salvatore. This appeal concerns two questions regarding the modification of child support under Section 510A of the Illinois Marriage and Dissolution of Marriage Act. The first question is whether changes in the income of the obligee are relevant to a determination of a substantial change in circumstances when the prior order was entered under the old Act before the adoption of income shares. The second question, provided the first question is answered in the affirmative, is whether Dr. Salvatore demonstrated the existence of a substantial change in circumstances based upon an increase in the income of appellee petitioner Brenda Kozak, formerly known as Salvatore. How can we find a substantial change in circumstances if the terms of the marital settlement agreement did not reflect the wife's income was factored into the amount of child support that was set or even potential income? And that's different than the health insurance provision, which does mention something about the future. So how could we do that? Yes, and that, of course, would relate to the first question. And if we consider the plain language of the statute, we see that the Court may consider changes in circumstances that would warrant an application of those changes and that the enactment of income shares itself is not a substantial change in circumstances. The plain language of the statute does not state that the Court may not consider factors that may not have factored into a guideline calculation at the time the prior order was entered. But the point is there was a marital settlement agreement in this particular case, correct? Yes. And both parties come to an accord, and the Court does not take a great deal of evidence on the basis of that accord, but whether the accord was common, whether it was agreed to by both parties, and then makes a determination that it will put it within the judgment. So in this case, did the trial court take any evidence about Brenda's income at the time of the marital settlement agreement? The Court had entered a guideline calculation based upon the guidelines that were present at the time. And those guidelines... But that was in the agreement. Yes. That was not based upon testimony that the Court had taken, was it? That was a part of an agreement, yes. But under our prior act, even an agreement for guideline child support, if deviated from, would have required the Court to make express findings. Was it deviated from? It was not. Okay. And so we have a guideline calculation. Do we know? Do we know why not? Well, the prior iteration of Section 505 only required the Court to make findings when there was a deviation. Correct. So when there was working at the time that was entered. She was not. And she acknowledged that on the record. She also acknowledged that she had no income at the time that the marital settlement agreement was entered into. Okay. So there might not have been any reason for a deviation, correct? Correct. And that is part of my argument. To address Justice Zinoff further, I would note that there is further support why the Court should consider the income of the parent, although the prior order was not entered with a deviation. For example, the prior iteration of Section 505, specifically 505A2, allowed the Court to consider the financial resources and needs of the custodial parent when deviating from support. So it would have been a factor for the Court to consider at the time had Ms. Kozak actually earned income. Furthermore, there is legal precedence under the prior act that would have supported the consideration of changes in the income of the abogee after entry of judgment relative to a modification hearing. Specifically, the 1991 Third District Appellate Court decision in a marriage of Johnson states that the Court should consider not only the needs of the custodial parent. If the legislature had intended a different result, the legislature certainly could have put language in Section 510A1 as presently drafted, which would have instructed the Court to ignore the income of the abogee if the prior order had been entered without a deviation from the statutory guidelines. We don't have that language. Further, I would argue that the Court's decision to ignore the income of the abogee unless there was a deviation would then lend itself to a finding that if the income today would have resulted in a deviation previously, then the Court should not ignore that income today. But that type of analysis requires... How much income does it take to be a substantial change? That is not defined by statute. There has never been a bright line rule. It has always been the creature of case law. And the trial court here said no substantial change. Yes, which would bring us to the second question, but we don't even get to the second question unless we first establish that the income of the abogee and changes after entry of judgment would have been relevant to a finding of a substantial change in service. Well, I think the point that Justice Burkett may be making, if I may speak for him, is we're not going to give you a decision on point A until you talk about second point. So let's talk about did the judge make a finding about a substantial change in her income? In this case, yes. The Court first said it wasn't relevant, but if it was relevant, I don't believe there was a substantial change in circumstances. And I can address that issue. Thank you. Dr. Salvatore currently pays Ms. Kozak child support of $97,200 per year. To which she agreed. Yes. And Ms. Kozak was unemployed with no income in August of 2015 when the prior order was entered. Her gross annual income has increased to in excess of $45,000, which equates to net income of approximately $38,500. Mr. Dr. Salvatore's income has increased only slightly since entry of judgment from $303,750 net income annually to $304,162. You initially went before the trial court on a petition that it had decreased, correct? But you have abandoned that for purposes of appeal? Yes. We are not seeking a review of the Court's finding as to Mr. Salvatore's income. Now, with regard to Brenda, she has another child now. She does, yes. But she has returned to work as of January of 2016. There was a period when she was on maternity leave and was unemployed. Though that has not been argued at the trial level by Ms. Kozak as a fact for the Court's consideration relative to the issues. Is it a fact that we can consider? I believe that to the extent that Ms. Kozak would argue it, she would have waived that argument on appeal. I don't believe that the child by her new husband would be relevant to the factors before this Court. Her husband is employed. There is a joint tax return that was admitted into evidence, which is part of the trial record on appeal. When we turn to the impact of Ms. Kozak's income with an eye toward an assessment as to whether or not there has been a substantial change in circumstances, we see that Ms. Kozak has gone from 0% contribution to the party's combined net incomes to 11.25%. Her spending power has increased from $97,200 to $135,765, which represents an increase of approximately 40%. Further, I don't believe that we can ignore the actual impact of income shares on the child support obligation. The case that was cited by Ms. Kozak in her brief, specifically the Riegler case, does state that the Court may consider what the guidelines calculations at that time would be when assessing a modification of child support. In this case, when child support is recalculated under income shares, Dr. Salvatore would pay Ms. Kozak only $40,427 per year. This represents a decrease of $56,773 per year. Has there been any change in the custodial arrangement that would dictate that? There has not been alleged any modification subsequent to entry of judgment. I know one child may be reaching majority and then college age. I don't know if that's occurred yet, but is there anything about at the time this was heard, the three children, that they don't need support anymore? That they have become YouTube sensations and they have their own tube and they have followers and sponsors? The lack of need for support was not argued as a basis for a substantial change. However, I don't believe we can ignore the disparity between the current order and what the current guidelines would provide for, especially bearing in mind that the legislature enacted income shares in an effort to align child support orders with the money parents of intact households actually spend on their children. When we look at it through that lens, what we see is, based upon the income share schedule, Ms. Kozak is receiving $56,773 per year in excess of what two parents with three children in an intact household would be expected to spend on their children. But if they were in an intact household in this situation, they would have a significant and the intact household would be the Salvatore household, they would have certainly a different life circumstance than they do now. They would do other things. The children might engage in many more activities than they do now, or maybe they're just engaging in the activities they should have. I would note that Mr. Salvatore pursuant to the judgment for dissolution of marriage, which incorporated a marital settlement agreement, does contribute to child-related expenses over and above his child support order. So I do not believe that there would be any material impact on the children's participation in any various activities. And I would note that the income share schedule itself was designed by our legislature to address that very concern. And the schedule is a reference point in the implementation of income shares. And when we consult with the schedule, we consider what the combined net income per month of the parties would be, and we look at a column for the number of children of the parties, and that amount is then divided in proportion to that income. That shared obligation based upon our legislature is what two parents in an intact household would be expected to spend on the children. But why then did Dr. Salvatore agree to provide $96,000 worth of support for those children if they didn't need it? At the time, there was a guideline in place which required Dr. Salvatore, absent a deviation, to pay 32 percent of his net income. And at the time that that was entered into, Ms. Kozak did not have any income. And as a result, Dr. Salvatore was not in a position where he could argue that the court should deviate from the statutory guidelines based upon Ms. Kozak's income. And, all right, not based upon her income, but based upon the needs of the children. Well, if we look at our case law previously generally regarding windfall, the windfall case is typically deviated from child support when the obligor hovered around 350 up to 500,000. That was an issue for the court to provide guidance and enter findings if the court had determined at that time that deviation had been appropriate. It was my understanding that Mr. Salvatore agreed. We're going back to the fact that there was an agreement that these children, windfall or not, needed about $96,000 a year to live. And today, they don't need that anymore? That calculation, as I've stated, was pursuant to the guideline, which had been the product of a pretrial conference with the court. And I'm quite certain that if Ms. Kozak had income at the time of entry of that judgment, Dr. Salvatore would have argued for a deviation. Well, he had, during the proceedings that preceded this agreement, he had brought a petition to compel her to go back to work, even though he had fired her from his particular practice. He wanted her to go back to work as a registered nurse. He wanted her to have income. Why did he agree to $96,000 a year? The facts on the ground at the time was that she was not employed. And I do think it's telling that approximately six months, five months after entry of judgment, she was back working full-time in her field. Because she had gotten married and everybody knew that was going to happen. Well, we did not know, or Dr. Salvatore did not know. There was no maintenance ordered. Why was no maintenance contemplated for a woman who was the wife of a dentist? I believe it was because it was understood that she would be getting married, but not that she would be going back to work at any immediate event on the horizon. Ultimately, she did go back to work in January. And she's maintained her employment apart from her maternity leave with her child by her new husband. I believe that is the critical issue, is that she was unemployed at the time. It was not anticipated at the time of entry of judgment that she would be going back to work. It is mentioned, and one more question, it is mentioned in the insurance provision in the marriage settlement agreement. What specifically? That she may get insurance through her employer. The health insurance provision has different language in it. Okay, so in front of me, I'm paraphrasing it. Of course, it's not uncommon for these orders to address contingencies relative to health insurance going forward. Right. But it was an anticipated event that might happen, that she might get health insurance through her employer. Well, with that in mind, you're looking at cost savings for insurance purposes. It may have been addressed as to a possible future event. From what I'm hearing, it wasn't within a specific time period.  But they also talk about dividing the costs on a proportionate basis in relation to the party's net annual incomes. So that's more specific. This is in the health provision section. So it was anticipated, or at least hoped, that she potentially would go back to work. Generally, child-related obligations that are incorporated into a marriage settlement agreement, in addition to the child support, would contemplate the health insurance costs, who's carrying the health insurance, who is paying what proportionate share of college contribution or extracurriculars and school costs. Those obligations are generally crafted in a marriage settlement agreement as separate articles and separate obligations. At the time that the prior order was entered, there was no modification to the child support obligation based upon the health insurance premiums, which we have today. Your time is up, Mr. Sullivan. Good morning, Your Honors. May it please the Court, my name is Dan Loisel. I represent Brenda Salvatore. And as we had indicated, I believe that... Well, Mr. Loisel, let's start with this question. Yes. Why, if these children today don't need Dr. Salvatore's income to survive or to live, why did they, why was there no deviation, or why was $96,000 a year ordered and agreed to by the parties? Well, I think looking at the compound nature of Your Honor's question, I don't know that we've ever submitted, nor would I acknowledge that the children don't need that to survive. I believe that when, during the course of the marriage, you had a family unit whereby Dr. Salvatore made a significant amount of money, and the children lived a lifestyle such that it allowed them to do things and live a lifestyle commensurate with Dr. Salvatore's income. So there was no reason at the inception of the judgment to deviate, a deviation I don't believe was ever asked for, nor was it entered by the Court, because there was no reason to deviate. It was guideline child support, and I would agree with Mr. Sullivan in that case, which is there was a calculation as to Dr. Salvatore's net income for purposes of child support under 505-VET, and that was based upon having three children, 32% of his net income, and that is the amount that was entered. No deviation was considered because, number one, and I was trial counsel at that time, I certainly would not have agreed to it on behalf of my client, nor would I have advised her that that was something that she should do, is take a deviation. So from that standpoint, Your Honor, I would not submit to the Court that the children don't need that because they are trying to approximate, or I should say, the judgment tries to approximate the lifestyle that the children would have enjoyed had the marriage survived. And while certainly it's not a perfect formula and it's not a perfect idea, that money combined with whatever money Brenda is able to make and the lifestyle she's able to provide is something that the child support statute, I think both then and now is something that is intended by the legislature to try as nearly as possible to approximate the lifestyle that the children would have enjoyed had the marriage survived. So what is the substantial change in circumstance now? I don't believe that there is a substantial change in circumstances, Your Honor. In fact, as I had argued to the trial court, I believe that the only substantial change in circumstances that gave Dr. Salvatore the grounds to come in and ask for modification was the passage of the new income shares statute, which went into effect on July 1, 2017. And the legislature, I think, anticipated this type of proceeding by putting in the language, the limiting language in 510A, by saying you cannot come in and ask for a modification based only on the change in the statute. So as I argued to the trial court, the substantial change, we never got there. And if we don't get through that threshold question of the substantial change, we don't then get to the modification provision of calculating the amount under the new income shares statute. Well, counsel says that she's now earning money that she wasn't earning before. So there's two components to that, and I think the first component, Your Honor, is that while she did not have an income at the time on the day of judgment, the testimony by Brenda and the facts at the time of the judgment was that she had work and had been employed during the course of the divorce. Just because she wasn't actually employed on the day of the judgment shouldn't then set up some sort of new standard that, well, if she makes any money moving forward post-decree, that that should somehow trigger a review. And I think that it lets the cat out of the bag a little bit by, number one, saying that, as I think Justice Zinoff pointed out, the parties knew at the time of the judgment that Brenda was probably going back to work at some point. And, in fact, she did. I think it was only about four or five months later that she returned to work. That was well known to both litigants and counsel at the time of the judgment. So when we look at her making more money, there's no question that she makes a little bit more money, and I'm using that term relatively, but a little bit more money post-decree than she did on the day of the divorce because on the day of the judgment she was making $0. Now she's making, I think historically, has made $3,3500 a month. But as the trial court noted, and I argued, all changes are not substantial changes. You can have a change, and it's not a substantial change. And as Justice Burkett pointed out, and I agree with Mr. Sullivan, there is no right-line rule as to a threshold amount as to what constitutes a substantial change in circumstances. It's fact-specific, and it's to be determined by the facts and circumstances of each case by the trial court. And I think that's why the trial court is invested with such discretion in determining a substantial change of circumstances because it is an abuse of discretion standard, and that's because the trial court has the best idea and the best view of the facts to determine and sort through, is this a change or is it a substantial change? And I don't believe that there was any substantial change because when they first filed their motion to modify, and when I say they, I, of course, mean Dr. Salvatore, there was no mention in the initial motion to modify of Brenda's income at all. That was not a stated reason for the modification. That only came up at the time of hearing. So what that led me to believe, and I think that the logical inference is, is that at the time of filing that motion, her income, it didn't matter. What mattered was was that Mr. Salvatore knew, or excuse me, Dr. Salvatore knew that there was a new statute that would, if applied, lead to a significant reduction in the amount of child support that he had agreed and was ordered to pay at the time of the judgment. That is not enough because the legislature tells us it's not enough. So... Then there was also, as I recall in the record, some interchange between the judge and counsel for Dr. Salvatore about how his income was being calculated and how it may not have been believable. Correct, Judge. And is that when the situation changed? Yes. And what happened specifically was that when Dr. Salvatore initially filed his motion, he, in support of it, filled out a financial affidavit. And that financial affidavit stated, I believe initially, that his income gross was approximately $20,000 per month. I then, subsequent to that filing of the financial affidavit, conducted discovery, and I obtained his personal bank records and his business bank records. And what we found was that the financial affidavit used as grounds or in support of his motion to modify was, I believe I called it at the trial court, a fiction because it woefully undersold what he was actually making. And that evidence was adduced at trial when it turned out that the deposits into his business account and then from the business account to his personal account, it was short on both his tax returns and on his financial affidavit. So how far into the proceedings did the amended petition get filed? It was never an amended petition written, if I recall correctly, Your Honor. I believe that the chain of events was that towards the end of Dr. Salvatore's case in chief, he, Attorney Sullivan, started to argue Brenda's income. And I objected and said that Brenda's income is not relevant. It was not raised in the petition or the motion to modify, and therefore it's not properly fled, nor is it relevant under the statute. Attorney Sullivan made an oral motion to amend the pleadings to conform to the proofs. Over my objection, the trial court allowed that amendment such that Brenda was then able to be called and she was able to testify and under adverse examination by Mr. Sullivan, was able to be questioned about her income and her employment history. Do we actually have a paper copy in this record of an amended pleading? I don't believe that there is an amended motion to modify, Your Honor. No, I think it was the initial motion to modify and then simply the oral motion to amend the pleadings to the proofs at the time of judgment. And that led then to my argument on the motion for the directed finding, which was essentially what I have argued in my brief to this court, is that number one, there was not a proven substantial change in circumstances in Dr. Salvatore's income. And I think as counsel acknowledged, that is not something that is brought up before Your Honor. That issue has essentially been seated. So if we start from the standpoint of Dr. Salvatore's income at the time that he asked the court for modification is the same or slightly more than it was at the time of judgment, we are simply left then with the issue of is the payee's income standing alone sufficient to trigger review under the income shares statute modification post-July 1st, 2017? And I would submit that even if for purposes of argument, and I'm certainly not saying that there was a substantial change in circumstances, but even if we look at this and say, fine, for purposes of argument, there was a substantial change in circumstances, or excuse me, it still leads us back to what is the grounds for bringing this before the trial court? And the only change, the only substantial change, is the passage of the new act itself. Or I shouldn't say the passage, but the effective date of the new act itself. And the legislature in 510A specifically, I think, attempted to avoid these situations. I don't know that it was anticipated, perhaps this is maybe a loophole that some litigants have attempted to exploit, but I think the intention was that we're not giving a child support payor the option to come in and ask for a review simply because his child support obligation may go down because of the new statute. And as pointed out in Eppelin's brief and argued here today, he says, well, there's a significant difference between what he was ordered to pay and agreed to pay versus what the income shares now would say that he's supposed to pay. I would admit that. There is no question that isn't. Behind this is kind of a policy question, which is really for the legislature, not for this court, because there are thousands upon thousands of payors in the same situation as Mr. Salvatore here, correct? Yes, Judge. We would open the door to litigation. Everybody who, and the calculator is right online. You can go to HFS and you can plug the numbers in, and it would be very easy for any child support payor to go in and plug those numbers in and say, hmm, looks like I'm going to be paying less under these income shares. I might as well take it to the trial court and ask for a modification. And your argument is that the General Assembly, by putting in that provision, was guarding against this exact type of scenario. That is exactly my argument, Justice Burkett. We asked counsel about the provisions in the medical insurance and the sharing of the medical expenses that were not covered by insurance. And the language there, and again, I don't have it in front of me, so I apologize, but it talks about if Dr. Salvatore cannot provide it through his employer, it could be provided through Brenda's employer. And any excess would be covered in proportion to the party's net incomes. Counsel says that, well, that's the way those are phrased. We consider that always. But it was specifically in this agreement. What does it mean for us? Sure. And I think that Mr. Sullivan is at a bit of a disadvantage because he wasn't trial counsel at that time. And I can tell Your Honor that the reason that that provision is written in the way it is is that Dr. Salvatore is self-employed. He is a dentist who runs Great Smiles Dental, and he is the sole shareholder of, I believe it's a subchapter S corporation. At the time of the entry of judgment and negotiation of the marital settlement agreement, there were, as there are now, significant concerns and questions as to what the health insurance market was going to look like for self-employed persons and how that was going to impact potentially future coverage as we moved forward. Because the children at the time of the judgment were relatively young. It wasn't that we were close to emancipation. So the thinking was that if there was going to be a change in either the health insurance markets or the way that we can obtain or, say, a customer can obtain health insurance coverage, if it was somehow taken from him as a self-employed individual, that there would then be a provision for if Brenda's working and her employer offers coverage. It becomes simply a cost-benefit analysis. So would she have, I mean, was there any anticipation that she would go to work? There was absolutely anticipation that she would return to work, and the reason that that was anticipated is because she had a history of work. It wasn't that she was a stay-at-home mother for the entirety of the divorce. She, as Your Honor pointed out, had worked at Dr. Salvatore's business. She then worked, I believe, during the course of the pendency of the divorce litigation. She worked, and I don't recall off the top of my head what her actual job was. I thought it was another dentist's office. I think you're right at that time. But there was a motion that he had filed, I believe, that she go back to nursing, which would have made her more money. Right, and she, in fact, went to work as, and it was something I wasn't familiar with, a triage nurse where she's actually able to work from home. I was just communicating with you. Thank you, Your Honor. Mr. Sullivan. So, Mr. Sullivan, when that provision was put in the medical insurance, medical needs section of the child support provisions of the marital settlement agreement, to get it all in, that was just sort of canned language? That was contingency language, that in the event that this insurance would not be available in the future, we have a plan. If you don't include that type of contingency language in these types of agreements, everyone ends up back in court when these contingencies occur. And the plan was that then Brenda Salvatore would go back to work, correct? I read that language differently than you, Your Honor. The language specifically for health insurance states that if for any reason health insurance is not provided through either party's employer, that husband would secure the insurance. And then it provided alternatively should the parties agree in writing to do so, the parties can secure independent health insurance. And this would be proportionate to income. So when you have language that states should the parties agree in writing, that is a guideline for those parties that gives them a framework in which to operate in the event they reach that agreement. If there's never an agreement on that point, that still becomes an issue for the courts to adjudicate. And as I mentioned before, the health insurance cost for the children's portion of the premiums was not a factor as it is today for the sharing of that obligation. Today we have an income shares guideline calculation that is impacted proportionate to net income for each party to contribute to the health insurance. Okay, but if they can't agree to what the marital settlement agreement that they previously agreed to has provided, then it would have to come back to court. But right now we don't know that they would agree, correct? Well, the issue of the health insurance would be rolled into a guideline calculation today. So it would actually follow that language naturally, which would relate to the premiums being proportionate to net income. But we can't get to, and that's your point that you started with, we can't get to shared income provisions until we have a substantial change in circumstances, correct? Yes. But to arrive there, we first have to consider what framework is this being analyzed. And that brings us to the scope of the language that states the passing of income shares itself is not a substantial change in circumstances. And that brings us to this general policy question. And the legislature clearly intended a certain gatekeeping to avoid a flood of cases. The legislature could have expanded upon that language to address certain factors that are not to be considered. We must interpret this statute in light of the cases that existed at that time. And as I mentioned, Ingray Marriage of Johnson instructed courts to consider the financial resources of the custodial parent in assessing a modification. So that would have been a factor for the court to already consider. So this isn't a new factor. If the court had intended for 510A1 to preclude the court's consideration of factors that the court was already considering, then I believe that would have been made expressed in the statute. And what's our standard of review with respect to whether or not these facts before us established a substantial change in circumstances? There is case law in Ingray Marriage of Hughes which would support where there is a question regarding the legal implication of undisputed facts that it may be reviewed to no vote. Of course, counsel in his brief cited several cases which would suggest that the finding of a substantial change is abuse of discretion. Here, it's not disputed that Ms. Kozak was unemployed with no income at the time of entry of the prior order. It's also not disputed... It is disputed that she did work during the course of the divorce, that Mr. Salvatore wanted her to go back to work, filed a motion to compel her to do so. So it was contemplated that at some point in time she may be employed, correct? To address each of those items, I don't believe it's disputed that she was employed during the divorce. The facts surrounding her employment during the divorce largely come from Ms. Kozak in the record. And if we follow her own testimony, we see that she was only temporarily employed for brief pockets of time. I believe the spin on those facts may be in dispute as to whether or not that consists of sufficient employment for the court to give it any weight. But the fact that she was employed during the divorce case is not actually in dispute. As it relates to how these facts fit together for purposes of finding a substantial change, I would first note that quite clearly the trial court did not believe that the income of the obligee, Ms. Kozak, could be considered at all. And I believe that perception frames how the court views the application of those facts to the question of a substantial change. Thank you. Your time is up. Court thanks both parties for their arguments today. The case will be taken under advisement. A written decision will be issued in due course. The court stands in recess until the next case is called.